NOT FOR PUBLICATION  CLOSED

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| NIGAR FATIMA, | : | |
| Plaintiff, | : | Civil Action No. 04-5739 (JAP) |
| v. | : | **OPINION** |
| LABORATORY CORPORATION OF AMERICA, et al., | : | |
| Defendant. | : | |

APPEARANCES:

Lawrence McGivney
McGivney & Kluger, PC
23 Florham Park, New Jersey 08512
    *Attorney for Plaintiff Nigar Fatima*

Kerry M. Parker
Epstein Becker & Green
Two Gateway Center
12th Floor
Newark, New Jersey 07102
    *Attorney for Defendant Laboratory Corporation of America*

PISANO, District Judge.

    Currently before the Court is Defendant Laboratory Corporation of America ("LabCorp" or the "Company")'s motion for summary judgment of Plaintiff Nigar Fatima's claim that the termination of her employment violated the Family Medical Leave Act of 1993, 29 U.S.C. § 2601 *et seq.*, ("FMLA") and the New Jersey Family Leave Act, N.J.S.A. § 34:11B-1 *et seq.*,

("FLA").[1] Plaintiff contends that LabCorp violated her FMLA and FLA rights because it did not expressly provide her with advance notice that, should her father pass away while she was on FMLA leave, her leave would expire. The Court finds that LabCorp did not violate, or interfere with the exercise of, Plaintiff's FMLA rights because Plaintiff did not have a statutory right to a four-week leave after the death of her father. Further, the FMLA does not require employers to provide the type of notice that Plaintiff claims she should have received and, in any event, Plaintiff was on notice that the FMLA does not cover bereavement leave. Therefore, the Court grants Defendant's motion for summary judgment.[2]

## I.  FACTUAL BACKGROUND

### A. Events Leading to Plaintiff's Termination

Defendant LabCorp operates a nationwide network of commercial medical testing laboratories providing services ranging from routine blood analyses to highly sophisticated, advanced testing, such as molecular diagnostics. Plaintiff worked as a Laboratory Assistant in the Esoteric Department of LabCorp's Raritan, New Jersey office from January 1991 until November 20, 2002. At all times relevant to this action, Plaintiff was an at-will employee.

The events underlying this suit arose in October and November, 2002. On or about October 22, Plaintiff received word that her father had been hospitalized in India and was

---

[1] Due to the substantial similarities between the FMLA and the FLA provisions relevant to this case, the Court will analyze the two claims as one. The Court will not address Plaintiff's estoppel claim in light of her attorney's statement during oral argument that Plaintiff is not pursuing such a claim.

[2] Because the Court grants Defendant's motion for summary judgment, the Court will not address the parties' arguments regarding damages except to note that—as Plaintiff conceded at oral argument—punitive damages are not available under the FMLA.

suffering from a serious illness. The following day, Plaintiff informed her supervisor that her father was ill and she needed to travel to India immediately. At her supervisor's direction, Plaintiff went to the human resources ("HR") department in the Raritan office to speak with Julie Minerva ("Minerva"), an HR representative, regarding her need to take family leave for the purpose of caring for her sick father. During the meeting, Minerva provided Plaintiff with a letter which preliminarily designated Plaintiff's leave as FMLA leave. The letter instructed Plaintiff to complete an FMLA Certification form (attached to the letter) and return it to LabCorp by November 7 so that LabCorp could determine whether the circumstances qualified for FMLA leave. Further, the letter cautioned Plaintiff: "if we do not receive the completed form, or the situation does not qualify for FMLA as determined by our STD claims administrator, then all absences between now and 11/7/02 may be considered unscheduled and unexcused and subject to disciplinary action up to and including termination. We will consider 2 weeks of Personal Leave if FMLA is not approved." (Ex. 18 to Certification of Kerry M. Parker).

On October 30, while in India, Plaintiff obtained the requisite FMLA Certification from her father's treating physician and faxed it to her husband, Syed Husain ("Husain"), who was at the couple's home in New Jersey. Plaintiff directed Husain to fax the Certification to LabCorp, which he did on October 30. In the Certification, Plaintiff stated: "My father is seriously ill. He badly needs me for psychological and moral support and personal care. My presence will help him in recovery for at least 4-6 weeks." (Ex. 22 to Certification of Kerry M. Parker). On that same day, sometime after Plaintiff sent the fax to her husband, her father passed away. Neither Plaintiff nor Husain, who learned of his father-in-law's death on November 1, conveyed this information to LabCorp.

After evaluating Plaintiff's FMLA Certification and the supporting documents, Minerva approved the FMLA request on November 4, 2002 and a member of the LabCorp HR Department contacted Husain by telephone to inform him that the Company approved Plaintiff's request for leave. Husain did not mention to the HR representative that Plaintiff's father had died five days earlier. Three days after LabCorp approved Plaintiff's leave, however, the Company learned from another employee that Plaintiff's father had passed away during the preceding week. Consequently, on November 11, Mary Ann Meiser ("Meiser"), head of the Esoteric Department, contacted Husain via telephone and told him that due to the changed circumstances regarding Plaintiff's leave, LabCorp expected Plaintiff to return to work the next day. Husain responded that it was impractical for his wife to return to work the following day because she was in India, had a round trip ticket with an exact departure date, and it would be difficult to buy a ticket on short notice at that time of year.[3] Nevertheless, Husain contacted Plaintiff and informed her of the Company's request that she return to work the next day.

LabCorp then sent a letter dated November 12 to Plaintiff via certified mail advising her that she must return to work on November 18. Though he does not recall receiving the letter (and Plaintiff does not recall ever seeing it), the return receipt form indicates that Husain signed for the letter.[4] Plaintiff did not appear for work on November 18, 19, or 20. As a result, on

---

[3] There is a dispute of fact as to whether other issues were discussed during the November 11 telephone call. Meiser testified that she told Husain that Plaintiff could return on November 18, after Husain explained that his wife would be unable to return to work the next day. Husain claims that Meiser made no such offer. This dispute of fact, however, is not material.

[4] Though immaterial, the parties dispute the date on which the letter was received. LabCorp's position, based on a notation that appears to be in Husain's handwriting, is that Husain received the letter on November 13. Plaintiff points to a December 6 post office date stamp on the return receipt form to support her contention that the letter arrived after her

November 22, LabCorp sent Plaintiff a certified letter stating that she was considered to have voluntarily resigned her position due to job abandonment.

### B. *LabCorp's Employee Handbook and Leave Policies*

LabCorp distributes to its employees an Orientation Handbook that describes employee benefits and company policies, including the policies regarding FMLA leave and bereavement leave.  Plaintiff signed an acknowledgment form dated March 1, 2002 in which she acknowledged receipt of the LabCorp Orientation Handbook.  In the section of the handbook devoted to "Leaves of Absence," LabCorp includes a discussion of the FMLA and states that FMLA leave may be taken:  (1) for personal medical leave when the employee is unable to work due to a serious medical condition, (2) "for the birth (or within twelve months) of the employee's child," (3) "for the placement (or within 12 months) of a child with the employee for adoption or foster care," and (4) "when the employee is needed to care for a child, spouse, spousal equivalent, or parent who has a serious health condition."  (Ex. 8 to Certification of Kerry M. Parker, at LAB-201).  The "Leaves of Absence" section also sets forth LabCorp's policy on bereavement leave.  The policy states that "[a]n employee may be permitted, with the supervisor's permission, from one to five full workdays with pay" for bereavement leave.  (Id. at LAB-203).

## II.   DISCUSSION

### A. *Standard of Review under Federal Rule of Civil Procedure 56(c)*

A court shall grant summary judgment under Rule 56(c) of the Federal Rules of Civil Procedure "if the pleadings, depositions, answers to interrogatories, and admissions on file,

---

termination.

together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The substantive law identifies which facts are critical or "material." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

On a summary judgment motion, the moving party must show, first, that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the non-moving party to present evidence that a genuine fact issue compels a trial. *Id.* at 324. In so presenting, the non-moving party must offer specific facts that establish a genuine issue of material fact, not just "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986).

The Court must consider all facts and their logical inferences in the light most favorable to the non-moving party. *Pollock v. American Tel. & Tel. Long Lines*, 794 F.2d 860, 864 (3d Cir. 1986). The Court shall not "weigh the evidence and determine the truth of the matter," but need determine only whether a genuine issue necessitates a trial. *Anderson*, 477 U.S. at 249. If the non-moving party fails to demonstrate proof beyond a "mere scintilla" of evidence that a genuine issue of material fact exists, then the Court must grant summary judgment. *Big Apple BMW v. BMW of North America*, 974 F.2d 1358, 1363 (3d Cir. 1992).

### B. The Family Medical Leave Act

The FMLA provides that "an eligible employee shall be entitled to a total of 12 workweeks of leave during any 12-month period" under circumstances set forth in the Act, including "[i]n order to care for the spouse, or a son, daughter, or parent, of the employee, if such spouse, son, daughter, or parent has a serious health condition." 29 U.S.C. § 2612(a)(1).

According to the plain language of the statute, the FMLA does not entitle an employee to leave for bereavement purposes.[5] *See* 29 U.S.C § 2612(a)(1); *see also Barone v. Leukemia Soc. of Am.*, 42 F. Supp. 2d 452, 460 (D.N.J. 1998) (collecting cases); *Brown v. J.C. Penny Corp.*, 924 F. Supp. 1158, 1161-62 (S.D. Fla. 1996). An eligible employee who takes FMLA leave is entitled, upon the expiration of the leave, "to be restored . . . to the position of employment held by the employee when the leave commenced" or "to be restored to an equivalent position" with equivalent terms and conditions of employment. 29 U.S.C. § 2614 (a)(1)(A) and (B). Further, it is "unlawful for any employer to interfere with, restrain, or deny the exercise or the attempt to exercise any right provided under [the Act]." 29 U.S.C. § 2615(a)(1).

The United States Department of Labor ("DOL") has promulgated regulations that outline the FMLA rights and obligations of both employers and employees. Relevant to the instant case, the regulations require that employers who provide employee handbooks describing employment policies include in those handbooks "information on FMLA rights and responsibilities and the employer's policies regarding the FMLA." 29 C.F.R. § 825.301(a)(1). Further, employers must provide "written notice detailing the specific expectations and obligations of the employee and explaining any consequences of a failure to meet these obligations." *Id.* at (b)(1). The written notice must include the eight items listed in 29 C.F.R. § 825.301(b)(1)[6]; employers are permitted,

---

[5] Plaintiffs conceded this point at oral argument.

[6] Pursuant to 29 C.F.R. § 825.301 (b)(1), an employer's written FMLA notice must include:

> (i) that leave will be counted against the employee's annual FMLA leave entitlement . . .;
> (ii) any requirement for the employee to furnish medical certification of a serious health condition and the failure to do so . . .;

but not required to include other information. 29 C.F.R. § 825.301(b)(1) and (2). Violations of the FMLA or of the DOL regulations "constitute[s] interfering with, restraining, or denying the exercise of rights provided by the Act." 29 C.F.R. § 825.220(b).

Recovery for an alleged violation of the FMLA is available under two distinct theories: (1) the entitlement or interference theory and (2) the retaliation theory. *Parker v. Hahnemann Univ. Hosp.*, 234 F. Supp. 2d 478, 485 (D.N.J. 2002). The entitlement or interference theory derives from 29 U.S.C. § 2615(a)(1), which prohibits employers from "interfer[ing] with, restrain[ing] or deny[ing]" an employee's rights under the Act. *See Clifton v. N. J. Transit Corp.*, No. 03-3725, 2005 WL 2320047, at *4 (D.N.J Sept. 22, 2005). The retaliation theory "arises under 29 U.S.C. § 2615(a)(2), which makes it unlawful for an employer to discriminate against an employee who has taken FMLA leave." *Bearly v. Friendly Ice Cream Corp.*, 322 F. Supp. 2d 563, 571 (M.D. Pa. 2004). To assert a claim for interference, the theory under which Plaintiff seeks relief, one must establish that: "(1) she is an eligible employee under the FMLA, (2)

---

(iii) the employee's right to substitute paid leave and whether the employer will require the substitution of paid leave, and the conditions related to any substitution;
(iv) any requirement for the employee to make any premium payments to maintain health benefits and the arrangements for making such payments . . ., and the possible consequences of failure to make such payments on a timely basis . . .;
(v) any requirement for the employee to present a fitness-for-duty certificate to be restored to employment . . .;
(vi) the employee's status as a "key employee" and the potential consequence that restoration may be denied following FMLA leave, explaining the conditions required for such denial . . .;
(vii) the employee's right to restoration to the same or an equivalent job upon return from leave . . .; and
(viii) the employee's potential liability for payment of health insurance premiums paid by the employer during the employee's unpaid FMLA leave if the employee fails to return to work after taking FMLA leave . . . .

defendant is an employer subject to the requirements of the FMLA, (3) she was entitled to leave under the FMLA, (4) she gave notice to the defendant of [his] intention to take FMLA leave, and (5) the defendant denied her the benefits to which she was entitled under the FMLA." *Parker*, 234 F. Supp. 2d at 483.  Here, the only element in dispute is whether LabCorp denied Plaintiff the "benefits to which she was entitled under the FMLA." *Id.*

### C. Plaintiff's Claim that LabCorp Interfered with the Exercise of Her FMLA Rights

The crux of Plaintiff's argument is that LabCorp interfered with the exercise of her FMLA rights by failing to provide notice that, in the event that her father died, Plaintiff's FMLA leave would expire.  Further, Plaintiff contends that LabCorp's failure to provide this notice caused her unknowingly to violate the FMLA and resulted in her unjustified termination.

LabCorp's decision to terminate Plaintiff when she failed to return to work for nearly a month after her father's death, however, did not deprive Plaintiff of a right to which she was entitled under the FMLA.  Indeed, Plaintiff conceded at oral argument that she cannot show that she was entitled to any FMLA leave after the death of her father.  *See Barone*, 42 F. Supp. 2d at 460; *Sharpe v. MCI Telecommunications Corp.*, No. 5:97-580, 1998 WL 567947, at *5 (E.D.N.C. Aug. 25, 1998) (holding that employee's two-week absence from work following the death of her mother did not qualify as FMLA leave); *Lange v. Showbiz Pizza Time*, 12 F. Supp. 2d 1150, 1153-54 (D. Kan. 1998) (finding that bereavement leave which arose following the death of employee's mother is not protected by the FMLA); *Beal v. Rubbermaid Commercial Products, Inc.*, 972 F. Supp. 1216, 1226 (S.D. Iowa 1997) (finding that FMLA leave does not cover bereavement).  Moreover, the undisputed facts establish that LabCorp did grant Plaintiff the FMLA leave to which she was entitled—the period of time between Plaintiff's request for

leave and time her father passed away—and that the Company granted Plaintiff nearly three additional weeks of leave, well in excess of LabCorp's stated bereavement leave policy, after the Company determined that she was no longer eligible for FMLA leave.

Further, Plaintiff cannot show that LabCorp interfered with the exercise of her FMLA rights. Though some courts have found that employers interfered with an employee's FMLA rights even where the employee took more leave than the FMLA permitted, *see, e.g.*, *Barone v. Leukemia Soc. of Am.*, 42 F. Supp. 2d 452, 460 (D.N.J. 1998), no such interference occurred here. The FMLA and the DOL regulations did not require LabCorp to provide express notice that should Plaintiff's father pass away, her leave would expire. The DOL regulations require "written notice detailing the specific expectations and obligations of the employee and explaining any consequences of a failure to meet these obligations," but only the eight specific items listed in the regulation *must* be included in the written notice. 29 C.F.R. § 825.301 (b)(1). Providing notice to employees that FMLA leave to care for a sick family member terminates upon the death of that family member is not one of the eight items of which employers must provide notice. Rather, it is "other information" that employers "*may* include." 29 C.F.R. § 825.301 (b)(2) (emphasis added).

Plaintiff ignores the language of the statute and regulations and instead relies on *Sherry v. Protection, Inc.*, 981 F. Supp. 1133 (N.D. Ill. 1997) and *Fry v. First Fidelity Bancoporation*, 1996 WL 36910 (E.D. Pa. Jan. 30, 1996), as support for the proposition that LabCorp interfered with the exercise of her FMLA rights by failing to give her notice regarding the impact of a family member's death on an employee's eligibility for FMLA leave. Plaintiff's reliance on these cases, however, is misplaced. *Sherry* is not on point because the regulation at issue, 29

C.F.R. § 825.301(a)(2), does not apply in this case[7] and the employee's supervisor, aware of the date of the death, never requested the employee to return to work. In this case, the record is clear that LabCorp did request Plaintiff to return to work after the Company learned that her father had died. *Fry* is distinguishable because the employer in that case did not provide notice of one of the eight items of which notice is specifically required under 29 C.R.R. § 825.301(b)(1). *Fry*, 1996 WL 36910, at *5. Here, Plaintiff has not—and indeed cannot—identify any statutory language that required LabCorp to give her notice that FMLA leave does not cover time off for bereavement. Thus, LabCorp did not interfere with Plaintiff's exercise of FMLA rights, nor did it violate the statute or regulations. Because Plaintiff's claim fails as a matter of law, there are no genuine issues of material fact and Defendants are entitled to summary judgment on Plaintiff's claims.

Moreover, even assuming that LabCorp was required to provide notice that Plaintiff's FMLA leave terminated upon the death of her father and that Plaintiff must return to work in the complete absence of statutory language to that effect, Plaintiff's claim still fails because she was on notice that the FMLA does not entitle employees to leave for bereavement. First, the LabCorp Orientation Handbook clearly sets forth the circumstances under which an employee may take FMLA leave, none of which includes the death of a family member. Reinforcing the point, the handbook explains that LabCorp's bereavement leave policy allows an employee one to five days of bereavement leave, subject to approval from supervisors. Second, before Plaintiff left for

---

[7] Pursuant to 29 C.F.R. § 825.301(a)(2), an employer that "does not have written policies, manuals, or handbooks describing employee benefits and leave provisions . . . shall provide written guidance to an employer concerning all the employee's rights and obligations under the FMLA." LabCorp did provide Plaintiff with a handbook "describing employee benefits and leave provisions," thus rendering this provision inapplicable.

India, LabCorp provided her with a letter informing Plaintiff that in the event her circumstances did not qualify for FMLA leave, the Company would grant her two weeks of personal leave. Third, LabCorp contacted Plaintiff's husband on November 11 and requested that she return to work because of the changed circumstances associated with her leave, a message which Plaintiff's husband relayed to her.  The undisputed facts in the record thus demonstrate that Plaintiff had notice that the FMLA did not entitle her to leave for bereavement and that LabCorp required her to return to work.  Therefore, the record establishes that LabCorp did provide the notice that Plaintiff claims she was entitled to, even though the FMLA does not require such notice.

**III.    CONCLUSION**

For the reasons expressed above, the Court grants Defendant's motion for summary judgment as to all counts in Plaintiff's complaint.

/s/ Joel A. Pisano
JOEL A. PISANO, U.S.D.J.

Dated: October 18, 2006